IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MOUIZ EL MAKHLOUFI** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **STRATEGIC FINANCIAL SOLUTIONS LLC;** ) <br> **THE COMMONWEALTH LAW GROUP;** ) <br> **LAW OFFICES OF AMBER FLORIO, PLLC;** ) <br> **AMBER FLORIO;** ) <br> **THOMAS ROGUS;** ) <br> **GLOBAL CLIENT SOLUTIONS, LLC;** ) <br> **and** ) <br> **GLOBAL HOLDINGS, LLC;** ) <br> ) <br> **Defendants.** ) | **CIVIL ACTION NUMBER:** <br> ________________________ |

# Exhibit A
# Commonwealth Law Group Contract

This document is a legally binding agreement confirming that you ("Client") and Commonwealth Legal Group ("Commonwealth") wish to form an Attorney Client relationship.

Pursuant to this Agreements terms, Commonwealth will assist you with the resolution of burdensome debt, and as such, the Representation contemplated in this Agreement is referred to as a Debt Resolution Program. In return for Commonwealths services, you agree to pay specific amounts to Commonwealth, as specified in this Agreement and its enclosures.

Client is retaining Commonwealth to help resolve specific debts that Client cannot reasonably satisfy according to existing terms. These specific debts are listed in this Agreement.

Client must pay as agreed for Commonwealth to operate as contemplated in this Agreement. **The law firm puts in place a customized strategy based on the individual client and their debts in order to effectuate the goals of the law firm's representation. Following this strategy,** Commonwealths ability to resolve the proposed debt load is projected to take a number of months and an amount of payments listed in this document. Any variance from this strategy, including Client's failure to make timely payments, will affect Commonwealths ability to perform as agreed.

The specifics of Commonwealth and Clients responsibilities and expectations with regard to this relationship are discussed in this Agreement in the following order:

1. COMMONWEALTHS LEGAL SERVICES
2. FEES AND COSTS OF SERVICES
3. TERMINATION OF THIS AGREEMENT
4. ADDITIONAL TERMS AND DISCLOSURES
5. ARBITRATION AGREEMENT AND CLASS ACTION WAIVER

***Following the Attorney / Client Agreement are various notices, disclosures, schedules, lists, and authorizations related to this Agreement's terms. The contents of all documents enclosed are material to Commonwealths representation of Client, and are incorporated into this Agreement.***

## Client Information

**CLIENT**

| Full Name: | DOB: | SSN: |
|---|---|---|
| Mouiz Elmakhloufi | 06 30 1963 | 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 |
| **Address:** | **City** | **State, Zip Code:** |
| 106 Fair Acres Circle | Mystic | CT 06355 |
| **Home Phone:** | **Cell Phone:** | **Email Address:** |
| (860) 984-2087 | | mouize1963.@gmail.com |

**CO-CLIENT**

| Full Name: | DOB: | SSN: |
|---|---|---|
| | | |
| **Address:** | **City** | **State, Zip Code:** |
| | | |
| **Home Phone:** | **Cell Phone:** | **Email Address:** |
| | | |

**PROPOSED PROGRAM INFORMATION**

| Total Unsecured Debt: | *Estimated Program Length (months): |
|---|---|
| $48,402.00 | 48 |
| **Date of First Payment:** | **Programs Payment Amount:** |
| 10/3/2018 | $801.61 |
| ***Estimated Total Payments:** | **Law Firm Contact:** |
| $38,477.10 | John Carrozzella |

* - The estimates provided above are just that – good faith estimates. The actual results vary on a case by case basis. In addition, the accuracy of these estimates is dependent on the accuracy of the information that you provide, the terms of the settlements we are able to negotiate with your creditors and on your ability to save a consistent amount each month.

Benni ex 2460

# I. COMMONWEALTHS LEGAL SERVICES

Commonwealths services are performed by a group of professionals, including attorneys, paralegals, negotiators, assistants, and others. Attorneys directly supervise the activities they do not directly perform. Commonwealth will perform the various services described in this section.

## 1.1. Debt Analysis

Commonwealth will review Client's personal hardship and other debt circumstances and formulate a plan to negotiate improved terms.

## 1.2. Negotiate and Resolve Client Debt

Commonwealth will represent Client in the negotiation and resolution of unsecured debts listed in the Creditor List enclosed with this Agreement. Representation related to any debt is governed by the promises and limitations discussed throughout this Agreement.

## 1.3. Litigation Defense Services

Commonwealth will advise and represent Clients in their defense of litigation initiated by creditors or collectors to recover debts listed in this Agreement. Commonwealth attorneys are immediately notified of litigation, and may be assigned to address any litigation served on Client after the effective date of this Agreement. Litigation services are further conditioned and limited by other terms of this Agreement, circumstances of practicality, and jurisdictional rules.

## 1.4. Services Outside Scope of Representation

Commonwealth's services are limited to those specifically listed above. This means that Commonwealth will not provide accounting, financial planning, or tax advice. Commonwealth does not engage in credit repair or credit reporting. Commonwealth does not attempt to resolve debts on which a judgment has been obtained. Bankruptcy services, and defense or prosecution of any debt not listed in this Agreement are outside the scope of representation. Further, Commonwealth cannot guarantee that creditor or collector harassment will cease at any point in the representation. However, under some circumstances, Commonwealth may take appropriate legal action against creditors or collectors engaged in illegal activity.

## 1.5. Work Performed by Contracted Parties

Commonwealth Legal Group may contract work relating to this Agreement to third parties for such tasks including, but not limited to customer service and debt negotiations. Commonwealth attorneys will supervise all third-party entities to ensure contracted services comply with Commonwealth's rules and regulations.

### 1.6. Litigation Defense Services

Creditors and/or debt collectors may file lawsuit(s) against Client in order to collect non-payment of owed debt(s). Commonwealth will provide Litigation Defense Services in the event the client receives a Summons and Complaint. The Litigation Defense Service will include work done in court and/or negotiations out of court. Commonwealth's Litigation Defense Services and limitations include:

#### Services

1. Commonwealth will receive, review, and analyze any summons, complaint, petition, application, or other operative pleading the client has received.
2. Commonwealth will evaluate potential legal defenses to the Plaintiff creditors suit.
3. Commonwealth will review, analyze, and counsel Client regarding collection activity and debt restructuring associated with the litigated debt.
4. Commonwealth will engage with the Plaintiff or its hired legal counsel on Clients behalf to negotiate a resolution of the litigation.
5. Commonwealths attorneys may determine that a valid defense exists to the law suit, or that the suit is defective in some way favorable to Client. This determination varies by jurisdiction, current legal trends, and the personal knowledge of the local attorney.
6. If Commonwealths assigned attorney determines that Client is likely to gain a favorable result through continued defense of the litigation, he or she will prepare and file responsive pleadings on the Clients behalf, appear at subsequent court proceedings, and continue defense through various stages of litigation, including trial, if prudent.
7. If Commonwealth determines in its sole discretion that it does not have a good faith basis to assert a defense to the litigation on Client's behalf, Commonwealth will communicate this determination to the Client and discuss alternative potential strategies for resolving the litigation. In such cases, Commonwealths strategy may include, but would not be limited to, engaging in out of court negotiations directly with the creditor. No fee for Litigation Defense Services will be charged if Commonwealth determines it cannot provide a defense to the litigation.

#### Conditions and Limitations

1. All pages of any summons, complaint, exhibits, petitions, and/or other pleadings served to the client must be submitted to Commonwealth.
2. All lawsuit paperwork must be submitted to Commonwealth no less than fifteen (15) days prior to the lawsuit response date, or immediately upon the client's receipt of lawsuit paperwork.
3. If the litigation is in a State that permits less than fifteen (15) days notice, all lawsuit paperwork must be submitted no less than seven (7) days prior to lawsuit response date.
4. All lawsuit paperwork must be submitted to Commonwealth Legal Group at their fax number (800) 385-3670 or email address cs@Commonwealthlegalgroup.com
5. The "Retainer Fee," outlined in the enclosed Payment and Fee schedule or payments must be current on any agreed payment plan specific to the "Retainer Fee" in order for Commonwealth to provide Litigation services.
6. Commonwealth is not required to provide Litigation Services on any lawsuit of which the Client had knowledge prior the execution of this Agreement with Commonwealth. Knowledge of a lawsuit is typically determined by service of process (delivery of a legal complaint to a party being sued).
7. Commonwealth will not provide Litigation Services related to debts which are not included in this Agreement, or any attachments or amendments to this Agreement made prior to Clients knowledge of the law suit.

### 1.7. Bankruptcy and Other Alternatives

Commonwealth may discuss alternative legal routes in the event of changing circumstances on any enrolled debt(s), such as Chapter 7 & 13 Bankruptcies.

### 1.8. Conditions of this Agreements Effectiveness

a. This Agreement does not take effect, and Commonwealth has no obligation to provide any services, until both Client and Commonwealth have executed a copy of this Agreement and such copy is delivered to both Parties.

b. Further, this Agreement does not take effect until Client met, in-person or by telephone, with a Commonwealth attorney in client's state and the Commonwealth attorney has reviewed and approved client for representation by Commonwealth.

### 1.9. Assistance in Dealing with Difficult Creditors

It is important to understand that Commonwealth cannot force a creditor to negotiate your debt. Although Commonwealth will not accept a debt into the program from creditors it knows will not negotiate debts, there are times when a creditor that has negotiated with Commonwealth in the past may refuse to negotiate a debt. In such instances, the Commonwealth attorneys or negotiators may require your assistance in participating in the negotiation process. Commonwealth personnel will provide you with the information you will need in order to contact your creditor directly in an effort to reach a satisfactory settlement. If Commonwealth cannot successfully negotiate a debt for you, even with your assistance, it will refund to you the portion of your fees associated with that debt.

### 1.10. Timing and Amount of Settlement Offers:

Commonwealth will begin contacting your creditors as soon as we determine that a good faith offer to settle a given debt, whether on a lump-sum or installment basis, may be made, with such factors as the creditor's settlement policies, the rate of account accretion, the size of each debt and how close a debt may be to charge-off. Some creditors prefer that they not be contacted until you have accumulated sufficient funds in your Dedicated Account to allow a negotiated resolution within their historic norms. While settlement guidelines differ widely among creditors, an accumulation of 25% of the then-current balance of a debt will normally enable us to make a good-faith offer to settle that debt.

## 2. FEES AND COSTS OF SERVICES

Commonwealths fees are payable according to the following terms. No fees are collected by Commonwealth until those fees were earned through settlement of Clients respective debt.

### 2.1. Service Cost – Related Services

The Retainer Fee is $1,650. This fee covers the initial work performed by attorneys in crafting and reviewing your specific debt negotiation plan, as well as their continued legal work in securing or approving settlements, counseling you on the phone, providing litigation services, and any other legal tasks your circumstances require.

In addition to the legal services provided by Commonwealth, there are non-legal services related to the implementation, management and maintenance of Client's debt negotiation plan performed under the supervision of Commonwealth's attorneys. These services are provided at a cost of 25% of the Clients total scheduled debt (hereinafter referred to as Service Cost).

Commonwealth has a non-exclusive reciprocal referral agreement with independent contractors to provide non-legal services under Commonwealths direct supervision. Representatives of such independent contractors cannot and will not provide any legal advice to the Client, and any such advice will only be communicated to Client by Commonwealth. Although these services are performed under Commonwealths supervision, a court or courts might determine that there is no attorney-client relationship between Client and the independent contractor representatives in regard to these services, and communications between Client and the independent contractor representatives might not be protected by attorney-client privilege.

Together, the Retainer Fee and Service Cost total $1650 plus 25% of the total amount of debt you enroll in the Commonwealth program.

### 2.2. Program Details

| | |
|---|---|
| Total Unsecured Debt: $48,402.00 | Est. Program Length (months): 48 |
| Date of First Payment: 10/3/2018 | Monthly Payment Amount $801.61 |
| Estimated Total Payments: $38,477.10 | |

**The estimates provided above are just that – good faith estimates. The actual results vary on a case by case basis. In addition, the accuracy of these estimates is dependent on the accuracy of the information that you provide, the terms of the settlements we are able to negotiate with your creditors and on your ability to save a consistent amount each month.**

### 2.3. When and How Commonwealth's Fees are Paid

We do not charge any fee for our Debt Resolution services unless and until a Debt is successfully resolved. Our fee is due upon the occurrence of all of the following: 1) we negotiate, either through our own efforts or as a result of our debt resolution strategy, the settlement of a Debt, 2) you agree to the terms of the settlement, and 3) you make a payment toward the settlement of the Debt (unless the terms of the

settlement require no payment by you, in which case we would still be entitled to receive our fee for resolving that Debt. We will charge the proportionate share of the Retainer Fee for that Debt (based on the enrolled amount of Debt) and 25% of the enrolled amount of Debt on the Effective Date as reflected in the attached Creditor Listing, subject to any modifications which may occur as discussed in Section 2.9 and/or 2.10.

A. Although the settlement offers we negotiate, either through our own efforts or as a result of our debt management strategy, may have terms that require a single payment (for example, a $1,500 lump sum payment to settle a $4,000 Debt) or that require a number of payments (for example, payments of $500 per month for eight months to settle a $10,000 Debt), our fee for the settlement of any Debt is earned, and is charged in full, at the time you make the first payment to a Creditor on an agreed-upon settlement of that Debt.

B. We will present you with a settlement offer once you have accumulated sufficient funds in your Dedicated Account to pay both the negotiated amount of the settlement and our fee associated with that Debt. Our fees, once earned, will be paid to us by your dedicated account provider based on your authorization in this Agreement.

**2.4. Application of Client Funds**

All funds paid by Client will be saved in Client's Dedicated Account held by a third party dedicated account holder (See Dedicated Account Agreement) for use in making payments toward any settlements negotiated and paying Commonwealth's fees under the terms of this Agreement.

All funds in Client's Dedicated Account shall remain under Client's control at all times, and may be withdrawn by Client at any time without penalty. If Client notifies Commonwealth or the third party dedicated account holder of a request to withdraw their funds, Client shall be entitled to receive all funds in the Dedicated Account, other than any funds that have previously been earned by Commonwealth under the terms of this Agreement, within seven (7) business days of such request.

It is strongly recommended that Client retain all funds available for settlement payments and fees to allow Commonwealth the greatest ability to effectively represent Client under the terms of this Agreement.

## 2.5. Method of Payment

Under this Agreement, Client agrees:

a. to have Clients fees and costs as agreed to in this Agreement, to be automatically drafted by Client's third party dedicated account holder from Clients bank account into an authorized Federal Deposit Insurance Corporation ("FDIC") insured bank account held in Clients name (the "Dedicated Account") with Clients first payment to start on 10/3/2018, and thereafter each month on the day; and

## 2.6. Early Program Completion and Pre-Payment of Program Fees

If Commonwealth resolves all debts listed in this Agreement before the scheduled date of Clients final Service Cost payment, Client must continue to make all payments for the Service Cost and Retainer outlined in this Agreement.

## 2.7. Costs of Litigation Services – Court Costs and Trial Preparation Costs

a. Client must pay all costs associated with Litigation Services, including the payment of any court filing fees or any other court-imposed costs associated with the litigation. These costs vary by jurisdiction. Commonwealth will NOT advance such costs. Client acknowledges that failing to timely pay necessary costs may have adverse consequences, including but not limited to entry of judgment against Client in the litigation.

b. If a litigated matter proceeds to trial, Client shall also be required to pay the costs associated with Commonwealth's trial preparation, which the parties hereby agree in advance shall be set at three hundred fifty dollars ($350.00) per trial (the "Trial Costs"). Trial Costs commonly include but are not limited to, photocopying and reproduction costs, notary fees, long distance telephone charges, messenger and other delivery fees, postage, travel costs including parking, mileage, transportation, meals, and hotel costs, investigation expenses, and other similar items. The Trial Costs must be paid sixty (60) days before the scheduled trial date unless otherwise agreed upon by Commonwealth and the Client. The Client shall not be responsible for, and shall be refunded the Trial Costs if the litigation is settled at least thirty (30) days before the trial date.

## 2.8. Additional Fees

Client agrees to pay an additional $10.00 telephone payment processing charge for each time Client elects to make any payments by telephone

## 2.9. Increases in Balances of Accounts Subject to Representation

a. Client acknowledges and agrees that Client will not continue to incur any additional debt on any accounts subject to this Agreement, other than late fees, interest, and penalties. Any additional charges you incur after the Effective Date on any Debt will impair our ability to secure settlement offers. Accordingly, you agree not to incur any additional charges on any Debt after the Effective Date. This Agreement covers only the obligations listed in the attached Creditors Listings. In the event, you incur any additional charges on any Debt after the Effective Date, you agree that we may adjust the balance of such Debt (as well as the amount of our fee associated with the resolution of such Debt) to include the amount of the additional charges.

b. Clients program fees, program length, and draft amounts may increase due to any additional balances incurred by Client.

## 2.10. Verifying Your Debt Balance

If you have completed the Creditor Listing (enclosed with this Agreement and incorporated by reference) based on one or more credit card statements dated prior to the Effective Date, or without any credit card statement at all, the Creditors Listings may not reflect the actual amounts owed to each of your Creditors. If we determine this to be the case, we may, at our discretion, contact some or all of your Creditors to ascertain the exact amount owed to such Creditor(s) as of the Effective Date. If we substantiate that the amount actually owed to any Creditor on the Effective Date differs from the amount set forth in the Creditors Listings, you agree that the amount shall be deemed restated to reflect the actual amount of the Debt as of the Effective Date, with any corrected amount(s) controlling for all purposes going forward, including calculation of the Retainer Fee and Service Cost charged under the terms of this Agreement.

## 2.11. Should Client Default on Negotiated Settlement Terms

In the event Commonwealth negotiates the settlement of a Debt for Client with agreed-upon payment terms accepted by Client, and Client fails to comply with the terms of the settlement agreement, Commonwealth is not required to renegotiate the debts. Client may request Commonwealth to renegotiate such debt, and will be subject to an additional fee of two-hundred-ninety-nine dollars ($299.00) per renegotiation at the Clients expense. Client acknowledges and agrees to the following with respect to any such renegotiation(s):

a. The Representation Standard provision only applies to the balance of enrolled debt, not accounting for payments made on initial settlement prior to default.

b. Renegotiation may result in the settlement amount increasing.

## 3. TERMINATION OF THIS AGREEMENT

### 3.1. Termination by Client

Client may terminate this Agreement at any time, and for any reason. Should Client terminate this Agreement before all debts subject to the representation are resolved, all savings and unearned fees in Client's Dedicated Account will be refunded to the Client.

### 3.2. Termination by Commonwealth

This Agreement may be terminated by Commonwealth at any time for good cause, and upon reasonable notice to Client. In addition, subject to any applicable legal and ethical standards governing Commonwealths right to withdraw representation, Commonwealth may withdraw from representing Client in any litigation under the terms of this Agreement either with Clients consent, or with the permission of the court in which such litigation is pending.

### 3.3. Definition of "Good Cause" for Termination by Commonwealth

a. **Clients Failure to Cooperate with Commonwealth.** Client must cooperate and comply with all reasonable requests by Commonwealth and its agents in connection with the services to be performed under this Agreement, including requests for information and documentation, responses to settlement offers, and matters related to any litigation. Client acknowledges and agrees that failure to cooperate with Commonwealth is grounds for Commonwealth to terminate this Agreement and or to withdraw from representation of Client in any litigation associated with the Clients failure to cooperate.

b. **Failure to Pay Fees and Costs.** If Client fails to pay the fees and costs required under the terms of this Agreement, Commonwealth may terminate this Agreement and withdraw from representation of Client in any litigation associated with this Agreement.

c. **Failure to Pay Costs of Litigation.** In the event that Client fails to pay any of the court filing fees or other fees or costs associated with the litigation of a listed debt, Commonwealth will not be responsible for acting in response to the lawsuit until such time as the fees or costs associated with the filing have been received by Commonwealth. Moreover, Client agrees and acknowledges that the failure to pay the three hundred fifty-dollar ($350.00) Trial Costs associated with a trial in a timely manner shall constitute sufficient grounds for Commonwealth to withdraw from representing Client in connection with the lawsuit.

d. **Failure to Follow Commonwealths Advice on Reasonable Settlements.** Client agrees and acknowledges that Commonwealth has an obligation to Client as both a counselor and as an advocate, and that the underlying purpose of the Representation is to negotiate settlement of Clients debts. In the event that Commonwealth negotiates a reasonable settlement offer and advises the Client to accept, Client agrees that he or she shall not unreasonably withhold consent to accept the offer. Client acknowledges and agrees that it is unreasonable to withhold consent on a settlement offer when Client has no valid defense to the litigation claims at issue or when the settlement offer is within Commonwealths Standard of Performance. If Client refuses to consent to a reasonable settlement offer, Client agrees that Commonwealth may withdraw from representing the Client in any litigation associated with the settlement offer at issue.

### 3.4. Withdrawal from Representation of Client in Litigation

In the event that Commonwealth is entitled to withdraw from any litigation for whatever reason, Client agrees to execute any documents necessary to effectuate this withdrawal, including, without limitation, the execution of a substitution of attorney document that relieves Commonwealth as counsel in the litigation. If Client fails to execute any necessary documents, Commonwealth may request the court to be relieved as Clients attorney in that particular matter. Client acknowledges and agrees that Commonwealths withdrawal from any specific litigation does not necessarily terminate Clients entire Agreement with Commonwealth for any other litigation or for any other services falling within the scope of this Agreement. Notwithstanding Commonwealths withdrawal and without regard to the reasons for the withdrawal, Client will remain obligated to pay Commonwealth for any services performed up to and including when Commonwealth delivers its withdrawal notice to Client or Commonwealth receives a court order authorizing its withdrawal.

## Section 4: Additional Terms and Disclosures

**4.1. Clients Responsibilities to Commonwealth**

a. In consideration of Commonwealths experienced counselling, work out a feasible monthly payment plan based on the total amount of debt to be modified, which contemplates all fees and costs to Commonwealth as well as funds to deposit for use in settling debts on which Commonwealth represents Client. The Payment Schedule is enclosed;

b. Provide Commonwealth with accurate and complete information relating to any Client's finances and the state of Client's financial hardship as documented in the attached Hardship and Budget Information statement.

c. Provide Commonwealth accurate and complete information and documents relating to any debts subject to Commonwealths representation. These documents must identify each debt by creditors name, current account balances, and account numbers. Commonwealth is under no obligation to verify the information supplied by Client;

d. Forward all correspondence from creditors and collection agencies as soon as possible, but no longer than five (5) days from receipt;

e. Make all payments according to the Payment Schedule;

f. Refrain from discussing debts with creditors or collection agencies when contacted;

g. Notify Commonwealth in writing of any settlement offers you receive, including all of the terms and conditions of the offer;

h. Be willing and able to aid in negotiations when necessary, and understand that your level of involvement will not affect the terms of this Agreement, but may affect the speed and effectiveness of Commonwealths efforts;

i. Respond timely to all requests or communications from Commonwealth or its representatives, and promptly provide Commonwealth with any change of address or other contact information;

j. Make timely and complete payments on settlements negotiated by Commonwealth and approved by Client.

**4.2. Clients Authorizations**

Client Authorizes Commonwealth to:

a. To disclose information regarding Clients financial condition or status to any creditors and collectors in connection with effective representation;

b. To hold itself out as Clients representative to any party seeking to collect the debts listed in this Agreements Creditor Listing;

c. To engage creditors and collectors to negotiate reduction of the debts listed in this Agreements Creditor Listing;

**4.3. Client Acknowledgments**

Client Acknowledges and agrees that:

a. The Payment Schedule is based on previous settlement averages achieved and calculated by Commonwealth. Accordingly, the actual amount paid into the program may vary. More or less funding may be required to settle all represented debts;

b. The programs contemplated duration is an estimate based on full and timely payment each month as listed in the Payment Schedule. Any variation of payments, as well as many other factors, can affect the length of the program;

c. The success of Commonwealths representation on any particular debt may vary based on a number of factors, including your ongoing ability to make timely deposits to your Dedicated Account, the willingness of your creditors to negotiate settlements of your debt and other factors that are outside Commonwealth's control;

d. Creditors may still contact you regarding debts subject to this Agreement. However, you should notify Commonwealth of harassment, as there may be steps Commonwealth can take to prevent or rectify illegal harassment;

e. Any reduction in the amount owed by Client may be considered a taxable event. You should consult a tax professional to determine any tax obligations they may have as a result of any settlements negotiated on their behalf;

f. The fees and costs paid to Commonwealth are compensation for the services described in the Scope of Engagement and the funds deposited into your Dedicated Account are for the purpose of saving funds for settling your accounts with creditors. Until you authorize and approve any such settlements, no payments of any kind, including any monthly minimum payments, will be made to your creditors on the accounts; except those that are subject to Commonwealth's Settlement Pre-Authorization form which states that Commonwealth shall make all reasonable efforts to obtain your approval for any settlement offer obtained on your behalf. In the event Commonwealth cannot contact you after making reasonable efforts, you authorize Commonwealth to proceed with any settlement resulting in a savings of 50% or more of your debt;

g. You may continue to incur late fees and penalties on the accounts while enrolled in the program;

h. Your participation in the program will likely have an adverse effect on Clients credit score;

i. You should not incur any new or additional debt and should refrain from using or obtaining credit during the Commonwealth debt resolution representation. You understand and agree that all credit cards or lines of credit shall be closed and that no additional credit cards or lines of credit should be applied for during the Commonwealth debt resolution representation. You understand and acknowledge that you may keep credit cards out the program for emergency purposes only. These credit cards should not be from the same issuing bank as any accounts you entered into the Commonwealth debt resolution representation;

j. No debts listed in this Agreement have been secured by any personal or real property.

k. Active, inactive, or former military personnel understand that his/her military rank, pay, and/or benefits may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Commonwealth Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

l. Individuals with, or who are seeking Security Clearance, including military members, contractors and consultants, understand that his or her Security Clearance may be adversely affected by delinquent debt accounts and/or a decreased credit rating and Commonwealth Legal shall not be held responsible for any negative consequences that may occur by such personnel by their enrollment into the Debt Resolution plan.

**4.4. Voluntary Participation**

Client understands that participation in Commonwealths program is voluntary and you may, upon written request, cancel Commonwealths services at any time prior to the original estimated conclusion date of the program.

Client also agrees that:

a. Early termination may prevent Commonwealth from providing all services outlined herein and Commonwealth will not be responsible for any unresolved accounts upon cancellation.

b. In the event of any early termination of this Agreement, all Service Costs, Banking Fees, and Other Fees that have been earned and collected, shall be considered earned and are non-refundable.

c. Upon termination of this Agreement, any funds held in your Dedicated Account, less any amounts paid or owed in the form of fees and settlement payments, shall be remitted to you by paper check or ACH transfer.

d. Commonwealth will not collect any additional fees that have not previously become due after the termination date.

e. With Commonwealths permission, you may re-enroll Client Debts after termination. Any re enrollment shall be at Commonwealths sole discretion and is subject to a Reactivation Fee in

the amount of two hundred ninety-nine dollars ($299.00).

**4.5. Skipped Drafts**

a. In the event Client requests to skip a monthly draft, Client shall notify Commonwealth at least five (5) business days prior to the scheduled draft.

b. Client will continue to be charged any applicable fees and costs for any skipped months.

c. An additional month shall be added onto the Clients program to make up for each month Client skips a draft.

d. Commonwealth may deny a Skip Request and/or limit the number of approved Skipped Drafts if Commonwealth determines it is in the Clients best interest to continue drafting Clients monthly payment. Reasons for denying a Skip Request may include, but are not limited to, a resulting inability to negotiate and settle debts, potential acceleration of litigation and the default of active settlements

**4.6. Extension of Representation**

a. Subject to the terms of the Performance Standard, in the event Clients debts are not fully settled at the end of the estimated program timeframe, Commonwealth will automatically extend Clients program and continue to draft Clients monthly payment unless Client notifies Commonwealth in writing that Client does not wish to extend representation. Any fees due during the extension will be reduced by 50%

b. Client shall remain responsible for the monthly Legal Administration Fees during any extended representation period.

**4.7. Additional Disclosures & Disclaimers**

a. There are other remedies solutions available for clients to relieve themselves of their debt burdens. Those remedies include bankruptcy and consumer credit counseling. (See Exhibit A of this Agreement for further information).

b. Declaring bankruptcy may discharge or allow a court imposed repayment plan for the majority of Clients debts. However, this will be reflected as a permanent record on a Clients credit report for up to 10 years. Commonwealth will discuss and advise Client as to the bankruptcy option, including fees and costs, at any time that Clients circumstances change or Client requests such consultation. There are no additional fees required from Client for such consultation and preliminary advice regarding bankruptcy.

c. Consumer credit counseling may have less impact on a Clients credit rating than bankruptcy and reduce interest rates on current debts, but it generally requires re-payment of most-to-all of Clients existing debt and may not provide significant monthly payment relief.

**4.8. Confidentiality of Client Information**

Commonwealth agrees that any information provided by Client will be kept confidential and only be used in providing the services delineated in this Agreement, which may include, among other things, disclosure of confidential information to appropriate third parties in order to (a) streamline the negotiation process and (b) enhance Clients opportunities for settlement offers with Clients various creditors. Client agrees and acknowledges that such disclosures will be made with Clients express consent and will not require any additional consent or consultation by Client before such disclosures are made.

## 4.9. Full and Only Agreement

**This Agreement is the full and only agreement between the parties. All prior negotiations and discussions are superseded by this Agreement. Commonwealth has made no representations other than those expressly set forth in this Agreement, and neither Party has relied upon any representations or promises other than those expressly set forth herein.**

## 5. ARBITRATION AGREEMENT AND WAIVER OF CLASS ACTION

In the event of any controversy, claim or dispute between the Parties arising out of or relating to this agreement or the breach, termination, enforcement, performance, interpretation or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in the county in which the Client, in accordance with the laws of the state of the Clients residence. The Parties agree that the arbitration shall be administered by the American Arbitration Association ("AAA") or JAMS, or in the event of their unavailability, an arbitration service with substantially similar rules and arbitrator rosters, pursuant to its rules and procedures, and a single arbitrator shall be selected to preside by the arbitration service. The arbitrator shall be neutral and independent and shall comply with the relevant code of ethics. Any award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction over the Parties. If either Party fails to comply with the arbitrators award, the injured Party may petition the applicable court for enforcement.

The Parties agree that either Party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the Parties agree that the arbitrator may not consolidate proceedings of more than one persons claims, and may not otherwise preside over any form of representative or class proceeding.

The Parties shall share the cost of arbitration, including attorneys fees, equally. If the Clients share of the costs is greater than $2,000.00 (Two-thousand dollars), Commonwealth will pay the Clients share of costs in excess of that amount.

**Binding arbitration means that both Parties give up the right to a trial by a jury and their rights to have a dispute resolved in a court of law. It also means that both Parties give up the right to appeal from the arbitrators ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator. In addition, under the terms of this Agreement, the parties also give up the right to bring any claims on a consolidated or class action basis. In addition, certain remedies, such as statutory injunctions and fee shifting, that may be available in a court of law may not be available in an arbitration.**

In the event a Party brings suit against the other Party in federal, state or local court instead of proceeding with arbitration, or unsuccessfully challenges the arbitrators award, or fails to comply with the arbitrator's award, the other Party is entitled to costs of suit, including reasonable attorneys and paralegals fee and costs for having to compel arbitration or defend or enforce the award. This section and the requirement to arbitrate any dispute shall survive any termination.

*Initial:* ______

## CLASS ACTION WAIVER

Any court trial (whether before a judge or jury) or arbitration of any controversy, claim or dispute between the Parties will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver"). THE CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CONTROVERSY, CLAIM OR DISPUTE. Each of the Parties waives the right to litigate in court or arbitrate any controversy, claim or dispute between the Parties as a class action, either as a member of a class or as a representative, or to act as a private attorney general.

Please consult with independent legal counsel of your choice prior to signing this agreement as the class action waiver and or binding arbitration requirement (as applicable) contained herein affect your rights. Please do not sign this agreement if you do not understand these limitations.

*Initial:* ECM

***I represent that I have read, understand and agree to be bound by the terms of this Client Representation Agreement as set forth above and in the documents incorporated in this Agreement. I further acknowledge that the terms and conditions of this Agreement have been explained to my satisfaction by a representative of Commonwealth and that I have no unanswered questions about the program or this Agreement. I confirm that I agree to arbitrate any claims and to waive any right to bring or participate in a class action against Commonwealth.***

*Agreed to this* 26th *day of* August, *20* 18

*Signature of Client*

*Signature of Co-Client*

*Signature of Commonwealth*

## Notice of Right to Cancel

Date of Transaction: 8/~~23~~ 25 2018 cem

You may CANCEL this transaction, without Penalty or Obligation, including any agreements you signed at the in-person meeting with the Commonwealth attorney and/or paralegal, for up to FIVE BUSINESS DAYS from the above date. If you cancel, you will not be obligated to make any payments to the law firm and any agreements or other documents that you signed will be null and void. To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to the address below NOT LATER THAN MIDNIGHT OF August 31, 2018 (five business days after the Date of Transaction).

I HEREBY CANCEL THIS TRANSACTION.

Date: ____________

Clients Name: ____________

Co-Clients Name: ____________

Clients Signature: ____________

Co-Clients Signature: ____________

***Please send to:***

Commonwealth Legal Group, LLC
***420 Throckmorton Street, Suite 200***
***Fort Worth, TX 76102***

***(Sign and return this document only if you decide to CANCEL this transaction within five business days of the Date of Transaction shown above.)***

THE COMMONWEALTH LAW GROUP POWER OF ATTORNEY

## Power of Attorney

**I/We,** Mouiz Elmakhloufi , ____________________,

**Located at** 106 Fair Acres Circle ,

**In the City of** Mystic , **State of** CT **Zip** 06355 ,

hereby appoint The Commonwealth Law Group ("Commonwealth") as my/our attorney-at-law to do the acts described in this Power of Attorney. Commonwealth (and/or its designees) is hereby authorized to act as my/our attorney and to fully represent me/us in any litigation or negotiation of the modification, reduction, settlement, and payment on any and all debts allegedly due and owning in my/our name. Litigation representation includes attendance at required court hearings, if applicable.

I/We authorize Commonwealth to request and receive confidential credit and account information from creditors, credit bureaus, collection agencies, creditor attorneys, or any other third parties who may be in possession of such information and would be viewed by me/us personally.

This Power of Attorney revokes all earlier Power of Attorney given by, or on behalf of, me/us relating to all communications of creditors' claims and shall be effective and binding on me/us until revoked by an instrument in writing executed by me/us. I/We further authorize Commonwealth to release a copy of this Power of Attorney to my/our creditors or their agents. A copy of this Power of Attorney shall be deemed as effective as an original.

Executed on August 26, 2018

[signature: El Mouiz]
Client Signature

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
Client Social Security Number

____________________
Co-Client Signature

____________________
Co-Client Social Security Number

**State of** Connecticut **County of** New London

The foregoing instrument was acknowledged by me this 26th day of Aug , 20 18

by: Mouiz Elmakhloufi who is/are personally known by me or who

has/have produced: drivers license as identification and who did not take an oath.

Notary Public: [signature]
Carol E. Martone

My Commission Expires June 30, 2020

## Electronic Payment Authorization

By signing below, I authorize The Commonwealth Law Group (Commonwealth) (or their designees) to process debit entries from my checking, savings, or other FDIC-insured bank account. This authority shall remain effective until cancelled by me in writing, at least five (5) business days prior to my scheduled payment due date. **I will provide Commonwealth with a voided check or savings deposit slip.**

Name on Account (Please Print): Mouiz Elmakhloufi

Please transfer payments directly from my Checking account, Savings account, or Other account.

Bank Name: Connecticut Community Credit Union, Inc.

Bank Address: 43 W Broad Street

City: Pawcatuck St: CT Zip: 06379

Bank Phone #: 860-599-5379

**Routing # 2 1 1 1 7 8 6 6 6 Account # 277750

*Routing numbers are always 9 digits long and always start with 0, 1, 2, or 3.

| | | |
|---|---|---|
| [signature] | Mouiz Elmakhloufi | 8/26/18 Authorized |
| Signature on Account | Printed Name | Date |

Attach Voided Check or Savings Deposit Slip Here


MOUIZ ELMAKHLOUFI
106 FAIR ACRES CIRCLE
MYSTIC, CT 06355

2843
51-7866/2111

DATE

PAY TO THE ORDER OF $

DOLLARS

VOID

CONNECTICUT COMMUNITY CREDIT UNION, INC
43 W. Broad St. - Pawcatuck, CT 06379

FOR

MP

⑆211178666⑆0000000277750⑈0 2843

## Creditor Listing

| Creditor / Collection Agency | Account Number | Balance | Account Holder(s) | Last Payment Date |
|---|---|---|---|---|
| GS BANK USA | PL01003247172 | $17,652.00 | Applicant | 07/01/2018 |
| ELAN FIN SVC | 403766005620 | $13,210.00 | Applicant | 07/01/2018 |
| Lending Club | 92281133 | $10,854.00 | Applicant | 07/01/2018 |
| FM/CITIZENS | 1701524 | $6,686.00 | Applicant | 07/01/2018 |
| | | | | |
| | | | Total Debt Totals: | $48,402.00 |

Att Alyssa

Lawyer

phone 1866 212 7677

John Carrozzella

ph Taddy

Alica

2460

Ben: ex 2460

Att/Beni

fax 9789723130

## Electronic Communication Verification

Please print your email address on the line below:

mouize1963@gmail.com

You will receive an email of the Letter of Engagement and other documents executed today in the next three (3) business days. In case you do not receive an emailed copy, due to faulty address or lack of email address provided above, you will still receive copies of these documents with your Welcome Package. The Welcome Package will be mailed to you shortly after you are enrolled.

Please initial here to indicate you understand the above terms of email delivery: ELM

THE COMMONWEALTH LAW GROUP HARDSHIP AND BUDGET INFORMATION

## Hardship and Budget Information

### *Reason for Hardship*

| | |
|---|---|
| *Temporary Loss of Work* | *Company Reduced Hours* |
| *Loss of Job* | *Pay Cut* |
| *Medical Problems* | *Disability* |
| *Personal Injury* | *Loss of Spouses Income* |
| *Divorce* | ■ *Other* ______________________ |

*Please Briefly Explain Hardship:* Interest rates too high, can only make the minimum payments

### *BUDGET ANALYSIS*

*(All information should be on a monthly basis)*

| | | | |
|---|---|---|---|
| *Client Net Monthly Income* | $3,683.00 | *Funds Available* | $ 1,815.00 |
| *Co-Client Net Monthly Income* | [redacted] | | |
| *Total Income* | [redacted] | | |
| *Mortgage/Rent* | [redacted] | *Household Items* | [redacted] |
| *Home Owners Insurance* | [redacted] | *Clothing* | [redacted] |
| *Life Insurance* | [redacted] | *Laundry/Dry Cleaning* | [redacted] |
| *Medical Care* | [redacted] | *Utilities* | [redacted] |
| *Child Care / Support / Alimony* | [redacted] | *Telephone* | [redacted] |
| *Cable TV / Satellite* | [redacted] | *Auto Loans* | [redacted] |
| *Charity / Donations* | [redacted] | *Auto Other* | [redacted] |
| *Entertainment* | [redacted] | *Auto Insurance* | [redacted] |
| *Gym / Health* | [redacted] | *Education* | [redacted] |
| *Personal Care* | [redacted] | *Student Loans* | [redacted] |
| *Back Taxes* | [redacted] | *Misc / Other* | [redacted] |
| *Food* | [redacted] | *Total Expenses* | [redacted] |

***By executing this agreement, you are representing that you have considered these other options and further, that you have provided us with accurate information, including your financial information and the state of your financial hardship as documented in your hardship statement.***

Marcus Loane

1 844 627 2871

## Bankruptcy vs Debt Negotiation and Election of Services

**Bankruptcy and Debt Negotiation**

Commonwealth is a full-service debt resolution law firm which provides services including debt negotiation and restructuring and bankruptcy services. The following provides information about these approaches to debt resolution for your review. Clients should fully understand the advantages and disadvantages of each to make an informed decision.

**Bankruptcy**

Bankruptcy will usually discharge your unsecured debt and your creditors are not permitted to contact you once you have filed with the court. There are two kinds of bankruptcy: Chapter 13 bankruptcy where you are generally able to keep property that is mortgaged, such as your house or car, and are expected to repay debts in three to five years, and Chapter 7 bankruptcy where you must give up all non-exempt property and assets that you own in exchange for a discharge of most debt. Bankruptcy may be appropriate if you have pending foreclosures, collection litigation or wage garnishments; however, you may have issues in reestablishing credit for up to ten years. In 2005, the bankruptcy law was changed to make it more difficult for some consumers to file Chapter 7 bankruptcy based on a financial means test and credit counseling requirements that may require a repayment of some of your debt.

Commonwealth is a debt relief agency under the United States Bankruptcy Code Sections 527 (a) and (b), and we are required to provide the following information and notice:

A debt relief agency providing bankruptcy assistance to an assisted person shall provide—

(1) The written notice required under section 342(b) (1); and

(2) To the extent not covered in the written notice described in paragraph (1), and not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear and conspicuous written notice advising assisted persons that—

(A) All information that the assisted person is required to provide with a petition and thereafter during a case under this title is required to be complete, accurate, and truthful;

(B) All assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in section 506 must be stated in those documents where requested after reasonable inquiry to establish such value;

(C) Current monthly income, the amounts specified in section 707(b) (2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with section 707(b) (2)), are required to be stated after reasonable inquiry; and

(D) Information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case

under this title or other sanction, including a criminal sanction.

**IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER**

If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone.

The following information will help you to understand what must be done in a routine bankruptcy case and will help you to evaluate how much assistance you may need. Although bankruptcy can be complex, many cases are routine.

# THE COMMONWEALTH LAW GROUP

# DISCLOSURE AND ELECTION OF SERVICES

Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors.

If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with the preparation of your chapter 13 plan and with the confirmation hearing on your plan which will take place before a bankruptcy judge.

If you select another type of relief under the Bankruptcy Code (other than chapter 7 or chapter 13), you will want to find out what should be done from someone familiar with that type of relief.

Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.

**Debt Negotiation**

Debt Negotiation is a process where the law firm, based on your specific circumstances, develops a plan to manage your debt resolution with your creditors. In general terms, it is a process of negotiating with your creditors for a lower balance or forgiveness of debt, a reduced interest rate, a reduced monthly payment or other restructuring alternatives. To be successful in debt negotiation, you need to have sufficient cash flow to meet your living expenses each month and provide some funds towards resolution of your debt.

If appropriate for your situation, Commonwealth will contact your unsecured creditors in writing to notify them that you are represented by the law firm and that we are advising you as to all alternatives for debt resolution. As you have indicated in your compliance review, you prefer Commonwealth to attempt debt negotiation as an alternative to bankruptcy or other options. However, if your financial circumstances change, we will advise you as to other debt resolution alternatives, including those outlined above, so you can make an informed decision based on our advice.

If you have any questions regarding the above options, please contact us for further explanation. If you are ready to proceed, sign below your acknowledgement that you have reviewed the available debt resolution options and have determined that debt negotiation by Commonwealth is your preference, subject to your ability to request a different alternative if your circumstances change in the future.

**I have reviewed all debt resolution options available to me including doing nothing, filing for bankruptcy and consumer credit counseling, and elect to pursue debt negotiation services with Commonwealth, subject to my ability to request other alternatives, based on changes in my financial circumstances.**

Client El Mouiz Date 8-26-18

Co-Client ______________________ Date ______________

***Disclaimer – Settlement of Credit Union Accounts***

*This confirms my/our understanding and acknowledgement that, in the experience of Commonwealth, credit union debt accounts are often resolved for higher settlement amounts, meaning that such debts may cost me/us more to settle and result in smaller reductions from the debt amounts at the time of enrollment.*

*I/we acknowledge that my current credit union account(s) that are to be enrolled into the program are NOT cross-collateralized with any other credit union obligation(s). I/we understand that in the event it is later determined that any enrolled credit union account is cross-collateralized with any other credit union obligation that any enrolled credit union account(s) would be removed from the program and become my sole obligation to be resolve in the manner I see fit.*

*Further, I/we acknowledge that Commonwealth would thereby have no obligations to represent me regarding these accounts whether ongoing or in the future.*

El Mouiz
*Client Signature*

*Co-Client Signature*

Mouiz Elmakhloufi *Date* 8-26-18
*Client Name*

*Date*
*Co-Client Name*

## *Disclaimer – Settlement of Private Student Loan Accounts*

*This confirms my/our understanding and acknowledgement that, in Commonwealth's experience, private student loan accounts may cost me/us more to settle and result in a smaller reduction from the debts at the time of enrollment. I/we acknowledge that my private student loan account(s) that are to be enrolled into the program are NOT cross-collateralized with any other obligations with the same lending institution, are unsecured, and are not federally-backed loans. I/we understand that in the event it is later determined that any enrolled private student loan account does not meet the criteria above, Commonwealth shall have the right to remove such account from the program and the removed account shall become my sole obligation to be resolved in the manner I see fit. I/we acknowledge Commonwealth would thereby have no obligations to represent me regarding any removed accounts whether ongoing or in the future.*

*Furthermore, I/we understand private student loan accounts tend to have significantly higher average enrolled balances than those of traditional unsecured credit obligations. Accordingly, I/we understand that private student loan accounts may require a longer period of time to resolve when compared to my/our other enrolled accounts.*

*Client Signature:* El mouiz 8-26-18 *Co-Client Signature: Date:*

*Client Name:* Mouiz Elmakhloufi *Co-Client Name:*